# Graver's Appeal.

*Liability of trustees for interest, and costs of audit on his account.*

1. A trustee who invests a small trust fund with his own money on loan at four and one-half per cent, is not chargeable with a greater rate of interest, where it appears that the rate of investment was common, and all that could be safely had, in the neighbourhood.

2. Where an accountant has acted faithfully and prudently as " a good trustee," the costs of the audit cannot be imposed upon him, but must be paid out of the estate.

APPEAL from the Common Pleas of *Lancaster county*.

This was an appeal by Rebecca Graver, Mary Kafroth, and Fianna Carpenter, from the decree of the Common Pleas of Lancaster county confirming the report of the auditor on the account of Henry Graybill, trustee of Samuel and Rebecca Good.

On the 12th of February, A. D. 1820, Samuel Good and Rebecca his wife conveyed by deed all their estate to Jacob Johns and David Good and their heirs, in trust, first to sell and convey so much thereof as was necessary to pay all the debts of

said Samuel Good, and secondly, to pay the clear annual rents, incomes, and profits of the granted premises to the said Samuel Good and Rebecca his wife, for and towards the maintenance and support of life of the said Samuel and Rebecca, and their family, and for no other use ; and if the said Rebecca should survive her husband, in such case the clear annual rents and incomes, or so much thereof as the said trustees should think prudent, should be applied towards her and her family's maintenance and support of life during the continuance of her widowhood, &c., &c. The trustees sold part of the property, and paid the debts, and appropriated the rents and income of the balance as directed by the deed ; Samuel Good having died, and David Good having resigned, Samuel Reemsnyder was appointed in his place on the 22d day of April 1830, after which the trustees continued to apply the whole of the income to the support of Rebecca Good. Their accounts were exhibited from time to time, and Samuel Reemsnyder having died, his executor and Jacob Johns filed the account on February 13th 1854, showing a small balance in favour of accountants, to which the parties now appellants, viz., the children of Rebecca Good, filed an exception that the trustees ought not to have paid over the whole income to her; not being necessary for her maintenance. This exception was overruled by the auditor, to whom it was referred. Jacob Johns afterwards resigned ; and after several attempts to procure a trustee in his place, the present accountant and appellee was, September 5th 1854, appointed trustee, and gave bond with security in $6000. During the ten years of his administration he exhibited three accounts, which showed that he managed to accumulate from the surplus incomes, after providing for the maintenance of Mrs. Good, the whole balance due on this account.

On the 22d October 1863, Mr. Graybill exhibited an account of the trust, wherein he charged himself with but four and a half per cent. interest on the money in his hands, claimed $10 a year for renting the real estate, and asked $100 compensation or commission besides. Exceptions were filed to the rate of interest and commission. Mr. Graybill admitted having used the money of the estate for his own purposes, and mixed it with his own funds. The auditor declined to increase the rate of interest, but reduced the commission forty-nine dollars and forty-nine cents, and directed the costs, amounting to fifty-four dollars and ten cents, to be paid out of the estate.

Exceptions were filed to the ruling of the auditor on the questions of interest and costs, but the Court of Common Pleas overruled the exceptions, and confirmed the report without delivering any opinion.

This appeal was then taken, and the following errors assigned :

1. The court erred in confirming the account upon the question

[Graver's Appeal.]·

of interest, although the accountant charged but four and a half per cent. on the funds in his hands.

2. The court erred in sustaining the auditor's system of charging interest, by allowing the accountant to retain for expenses money that was not required for the purpose, whereby the amount of interest due by him to the estate was improperly reduced.

3. The court erred in confirming the auditor's action upon the interest, because the auditor's calculation, upon his own theory and figures, was plainly incorrect and erroneous in fact.

4. The court erred in sustaining the report of the auditor, which charged the costs of the audit upon the estate. The accountant should have been directed to pay the costs.

*Isaac E. Hiester, George Brubaker,* and *Andrew M. Frantz,* for appellants.—All the authorities concur in showing that a trustee is liable for the interest of money employed for his own purposes, at the rate of six per cent.: Verner's Estate, 6 Watts 250; Dyott's Estate, 2 W. & S. 565; Light's Appeal, 12 Harris 180; Biles's Appeal, Id. 335; Robinett's Appeal, 12 Casey 174; Pennypacker's Appeal, 5 Wright 494. In this case the accountant has charged himself with only four and a half per cent. interest, and is indirectly sustained by the auditor and the court below, by reducing the amounts on which interest is computed. This reduction is not warranted by the circumstances of the case, because the trustee distinctly fixes in his own account the amounts and times for which he is to pay interest. Yet the auditor and court below say that he should not be charged with interest on parts of this money for certain periods, because he was entitled to retain them to meet expenses. What difference can this make, if, as the accountant admits, he used the whole of the money for his own purposes? If he was entitled to retain any part of the money, but did not do so, and used the same, why should he not pay interest?

The auditor and court below were mistaken in allowing the accountant to retain any part of the money to meet expenses. He was in the regular annual receipt of more money than was necessary to defray the expenses of the trust. Receipts and expenses accrued every year about the 1st of April. The lowest receipts of any year amounted to $342.04, while the highest expenses of any year amounted to $217.23. The omission of accountant to collect the income of the estate in 1861 until May, can furnish no pretence for holding over part of the income of the prior year to meet the expenses of April 1861.

But the auditor and court below committed an actual mistake in figures in the application of their own theory. The accountant charges himself with $176.62 interest. The auditor makes him liable for $205.50, but does not correct the account accordingly.

He says: "In a different form and by a different mode of calculation from the above the accountant has charged himself with $205.60 interest." This is false in fact, as will appear from a glance at the account, where all the interest is exhibited together, amounting to $176.62. The interest at six per cent. on the funds in the hands of accountant, according to the amounts and periods he has sworn to in his account, would be $235.48.

As to the question of costs, the auditor and court below reduced the accountant's commission $49.49, and charged the estate with the costs of audit, amounting to $54.10; so that the exceptants are punished by a reduction of the estate, for correcting an overcharge of the accountant. There can, then, be no pretext for imposing the costs of this controversy upon the estate. They should be borne by the accountant, whose misconduct caused them: Sterrett's Appeal, 2 Penna. Rep. 419. The trustee in a prior account has charged and received commission on the balance, which is carried, as the first item, into this account.

*Thomas E. Franklin*, for appellee.—1. The principles which the counsel for the appellants wish to apply to this case, only obtain where a trustee uses the trust funds in carrying on his own business. Mr. Graybill explains what he means by using it for his own purposes, by stating that he mixed this money with his own at interest, for which he got four or five per cent. This statement was not contradicted; the appellees called him as their own witness, and what he said must be taken to be the truth of the case: Light's Appeal, 12 Harris 180. There is a great distinction between executors and administrators bound to pay over the assets, and the trustee of a continuing trust, who is only responsible for the interest which he is actually able to make: Worrall's Appeal, Knox, J., 11 Harris 44.

2. As to the costs. It is not pretended that the trustee has been guilty of any fraud or misconduct. Why then should he be visited with the costs? In the case cited by the appellants, Verner's Estate, 6 Watts 250, the balance stated by the executors on their account was largely increased, in consequence of its being shown that they had used the trust funds in conducting their own private business, as well as on other exceptions taken to their account; yet the costs were directed to be paid out of the estate. See also Robinett's Appeal, 12 Casey 191.

The opinion of the court was delivered, May 22d 1865, by

THOMPSON, J.—It seems to us that very little of the spirit of liberality is discoverable in the action of exceptants towards the accountant, in this matter, and to go farther than the auditor and the court did, in relation to his credits, would be unjust. It

[Graver's Appeal.]

was insisted that he ought to have been charged with six per cent. interest on the trust fund, on the basis of his own charges of four and one-half per cent. ; that is to say, with rests. But, if we were to gratify them in the rate of interest claimed, we certainly would not allow them to calculate it in that way. Rests are entirely discarded in this state. But why should he be charged with a greater rate than he could have gotten ? The proof is that four, four and a half, and five per cent. was all that could be had in the neighbourhood, and it was not easy to invest well at that. The accountant calculates the interest with rests at four and one-half per cent. I think he was justified in charging himself with no more than that rate, and would have been right in omitting the rests. The auditor does not mean to find the aggregate interest received to be $205.60. It is that amount, on his hypothesis, which he thinks, at six per cent, might have been received. The auditor, after submitting his calculation, says, " In a different form, and by a different mode of calculation, the accountant has charged himself with $205.60." ($176.62, he should have said.) This, it appears to the auditor, is as much, or more, than he (the accountant) would have received if he had invested it in the name of the estate, when we consider the difficulties of investing in the neighbourhood. It is manifest, therefore, the auditor meant to find that the accountant had charged himself with all the interest he had received, and so says, but, in referring to the sum, he inserted his own figures instead of those of the accountant, which he said were right in the aggregate ; and so must have thought the court, or they undoubtedly would have corrected the mistake. It was a clerical error of the auditor merely.

It was harsh to cut down the trifling compensation charged for the services which it was apparent the accountant must have rendered ; but we cannot correct that in this case. Even what remained must have long since disappeared in the litigation consequent on the exceptions to the account. Nor shall we interfere with the order in regard to costs. The accountant was a " good trustee," says the auditor, and was chargeable with no petty peculation or penny scraping, or withholding money ; and we think his charges only a reasonable compensation, although it was reduced by the auditor and court. If the exceptants are in the end injured by the estate being reduced rather than increased on account of the costs, it is only by the recoil of their own artillery. Nobody will serve as trustee if liable to be harassed at every step about such small things.

Decree affirmed at the costs of the appellants.